UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE BUCHWALD**

**08    08 CV    1032**

------------------------------------------------------------x

Rolling Transport Ltd.,

                            Plaintiff,

                 v.

Palmyra Shipping and Chartering Ltd,

                            Defendant.

:
:
:
:
:
:
:
:

**VERIFIED COMPLAINT**



------------------------------------------------------------x

        Plaintiff Rolling Transport Ltd ("Rolling"), through its attorneys DLA Piper US LLP, as and for its Verified Complaint against Defendant Palmyra Shipping and Chartering Ltd. ("Palmyra") avers as follows.

Jurisdiction and Venue

     1.      The Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 because the action involves a claim for the breach of a maritime contract of charter party.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

     2.      Venue in this district is proper in accordance with 28 U.S.C. §1391(b)(2).

Right of Action

     3.      Plaintiff Rolling brings this action in accordance with Section 8 of the Federal Arbitration Act, 9 U.S.C. § 8.

## The Parties

4.      At all times relevant hereto, Plaintiff Rolling was and still is a foreign business entity duly organized and existing under the laws of Liberia and with a place of business in a foreign country.

5.      At all times relevant hereto, Defendant Palmyra was and still is a foreign business entity duly organized and existing under the laws of a foreign country.  Defendant Palmyra cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rule B").

## The Charter Party and Voyage

6.      On or about July 3, 2007, Plaintiff Rolling, as owner of the M/T Baltic Sea (the "Vessel"), entered into a single voyage charter contract with Defendant Palmyra, as charterer of the Vessel, on an Amended Asbantankvoy form to carry a cargo of about 93,000 mt of fuel oil (the "CP").  (The recap of the fixture of the CP is appended as Exhibit 1.)

7.      Under the CP Palmyra had a right to nominate two load ports and one discharge port.  Palmyra thus nominated Santa Panagia and Augusta, Italy as load ports, and Rabigh, Saudi Arabia as the discharge port.  The Vessel, in addition, called Santa Panagia a second time at Palmyra's request as an interim port in accordance with the CP.  The Vessel completed the voyage between these ports approximately between July 12 and 30, 2007.

## The Unpaid Demurrage, War Risk Premium and Port Costs

8.      In accordance with the CP, Palmyra had a total of 84 hours of allowable laytime.  Palmyra, however, took a total of approximately 133 hours.  The Vessel was hence on demurrage for approximately two days.  As a result, Palmyra owes Rolling approximately $49,850 in

demurrage. (Attached as Exhibit 2 is a laytime statement showing the demurrage owed by Palmyra.)

9.     Because Rabigh, Saudia Arabia—the discharge port nominated by Palmyra—was an "excluded area" under Clause 51 of the CP, Rolling had to pay an additional war risk premium to its hull underwriters. Under the CP Rolling is entitled to reimbursement of $7,875 for the additional war risk premium it incurred.

10.     In addition, because Palmyra nominated Santa Panagia a second time as an interim port, in accordance with the CP it must reimburse Rolling for the additional time, bunkers consumed, and port costs incurred when the Vessel returned to Santa Panagia. The additional costs incurred by Rolling approximately total $76,740.

11.     After the voyage was completed Rolling duly invoiced Palmyra for the demurrage, additional war risk premium, and additional port costs it owed to Rolling. (Appended as Exhibit 3 are the invoices sent by Rolling to Palmyra.)

12.     Despite repeated requests, Palmyra has failed to pay the demurrage and additional war risk premium and port costs due and owing to Rolling.

<u>The Arbitration</u>

13.     The CP provides that any disputes arising thereunder shall be subject to London arbitration. As a result Rolling has commenced arbitration proceedings in London against Palmyra to recover the amounts due and owing to it by Palmyra. The parties are currently in the process of appointing arbitrators.

14.     Rolling estimates that its claims against Palmyra will total approximately $194,465. This amount includes $49,850 for unpaid demurrage, $ 7,875 for additional war risk premium, $76,740 for additional port costs, and $60,000.00 for interest, costs and attorney's fees.

- 3 -

15.    The attachment is necessary to secure satisfaction of the award to be issued in Rolling's favor in the London arbitration.

Claim for Relief

16.    Upon information and belief, Palmyra has or will have during the pendency of this action assets within this district subject to the jurisdiction of this Court, and which are, or will be, in the custody or control of one or more garnishees including, without limitation, BNP Paribas, HSBC Bank USA, NA, JP Morgan Chase Bank, Citibank, HSBC, The Bank of New York, ABN Amro Bank, Bank of America, Standard Chartered Bank, Wachovia Bank, Deutsche Bank, and Chase Manhattan Bank, and due and owing to Palmyra.

17.    Rolling seeks an order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching any assets of Palmyra held by garnishee(s) in this district to secure Rolling's claims in the London arbitration.

18.    Rolling seeks to attach funds in the total sum of $194,465 to cover its damages, fees, interests, and costs.

WHEREFORE, Plaintiff Rolling requests:

a.    That this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment, pursuant to Supplemental Rule B, attaching all tangible and intangible property of Palmyra within this district, and in whatever form, including any funds held by any garnishee, including but not limited to BNP Paribas, HSBC Bank USA, NA, JP Morgan Chase Bank, Citibank, HSBC, The Bank of New York, ABN Amro Bank, Bank of America, Standard Chartered Bank, Wachovia Bank, Deutsche Bank, and Chase Manhattan Bank, which are due and owing to Palmyra, up to the amount of $194,465.

- 4 -

b.   That this Court retain jurisdiction over this matter pending the issuance of a final

arbitration award.

c.   That Plaintiff Rolling have such other, further and different relief as this Court

may deem just and proper in the premises.

Date:   New York, New York
        January 30, 2008

Respectfully submitted,

DLA PIPER US LLP

By:_____
     Stanley McDermott III
     Camilo Cardozo
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 835-6000

Attorneys for Plaintiff
Rolling Shipping Inc.

ATTORNEY VERIFICATION

State of New York   )
               )     ss:
County of New York  )

CAMILO CARDOZO, being duly sworn, deposes and says as follows:

1.     I am an associate with the law firm of DLA Piper US LLP, attorneys for Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

2.     The sources of my information and the grounds for my belief are communications from Rolling Shipping Inc. ("Rolling") to colleagues in the firm's office in London, and the documents provided by Rolling regarding the claim attached as exhibits to the Complaint.

3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers is presently within this District.

_____
Camilo Cardozo

Sworn to before me this
30th day of January 2008

_____
Notary Public

CHRISTINE B. FARRELLY
Notary Public, State of New York
No. 01FA5037249
Qualified in New York County
Commission Expires December 19, 2010

Exhibit 1

**Rajeev Ahuja**

*V88. 09/07 ①    ② 04Jul07*

*Clean Fixture*

| | |
|---|---|
| **From:** | Mikkel Mathiesen ( TPM Geneva ) |
| **Sent:** | Wednesday, July 04, 2007 12:02 AM |
| **To:** | Knut Estensen |
| **Cc:** | Rajeev Ahuja; Vaughan English |
| **Subject:** | FW: baltic sea / palmyra -final recap- |

Have concluded below with your blessings.

Best regards,

Mikkel Kjaer Mathiesen, GM
Tanker Pacific Management (Geneva) Ltd.
Tel +41 22 592 6363
Dir +41 22 592 6351
Mob +41 79 592 6565
Email commercial@tanker.com.sg

-----Original Message-----
From: tankers@braemarseascope.com [mailto:tankers@braemarseascope.com]
Posted At: Tuesday, July 03, 2007 3:53 PM
Posted To: (Geneva)tpms.chartering
Conversation: baltic sea / palmyra -final recap-
Subject: baltic sea / palmyra -final recap-


FROM :  BRAEMAR SEASCOPE
DATE :  03/07/2007
TIME :  14:52:47
REF  :  JPG31105512
Tel: (44) 20 7535 2626, Fax: (44) 20 7535 2627


attn mikkel

f i n a l   r e c a p i t u l a t i o n

re : ''baltic sea'' / palmyra -c/p 03/07/2007-

strictly private and confidential
==================================

as per charterers authority we are pleased to recap the flwg fixture
concluded clean with all subjects lifted c/p dated 3rd july 2007

-charterers:-
 palmyra shipping and chartering ltd
 trust company complex
 ajeltake road
 ajeltake island
 majuro mh 96960
 marshall islands

-owners:-
 rolling transport ltd
 80 broad street
 monrovia
 liberia

-m/t ''baltic sea''
 1993 built
 singapore flag
 swdt 96,883.4 mts on draft 13.617m
 loa 243.285m
 beam 41.81m

*10 July 2007*

1

```
ktm 45.81m
tpc 89.8
sbt/coiled/igs/vrs/cow
p+i club noe - north of england p and i club
class dnv
h+m value usd ?? mill
```

-vsl's intake fueloil about 93,000 mts

-tbook vessel is suitable for trade to:-
  bp, chevron, eni, erg, exxonmobil, litasco, shell and total

-last 3 cargoes:-
  siberian light
  rebco
  rebco

-itinerary:-
  transitting bosporus
  eta omisalj 7th am, etd 10th am
  eta augusta 11th pm agw wsnp

-for
  chopt upto full cargo 1/2 grades fueloil wvns - vsl to maintain
  loaded temp 135 deg f - max loaded temp 165 deg f

  loading 1 sp sicily f/b 1 sp turkish med excl. sea of marmara

  discharging 1 sp saudi red sea not south of but incl. rabigh bay

  freight:
  lumpsum 1,335,000 usd 2/1 incl. suez dues

  chopt to top off 1 sp sicily and/or 1 sts cyprus excl. toc and
  payable as per interim/blending/reload clause

  saudi handling fees to be for owners account

==========
or in chopt
==========

  for
  min 80,000 mts 1/2 grades fueloil wvns - chopt upto full cargo no
  ddfrt for chrtrs acc pmqs - vsl to maintain loaded temp 135 deg f
  max loaded temp 165 deg f

  loading 1/2 sp sicily f/b 1 sp turkish med excl. sea of marmara

  discharging 1/2 sp euromed neobig excl. albania  but incl. malta
                       and gibraltar

  freight:
  ws120 if discharge west of augusta
  ws110 if discharge east of augusta

  overage 50 pct

  min flat 4.00 usd to apply

-laycan 11-12 july 2007 (0001-2359)

-dem 25,000 usd pd/pr

-84 hours shinc

------------------------------------------------------------------
palmyra shipping and chartering ltd additional clauses to
"asbatankvoy" charter party (chartering terms effective 15th september
2004) amended as follows:-
------------------------------------------------------------------

                               2

part ii

cl 01   d)  1st line delete "0600" insert "0001"
            delete balance  of d ie charterers amendment
            insert "should it become evident to owners that vessel
            will arrive at load port after expiry of laycan, owners
            to inform charterers and request new suitable laycan.
            charterersshall have the option to cancel the c/p, this
            option to is declarble latest two wroking days after
            receipt of such notice from owners. in the event that no
            such advice is received by owners within 2 working days,
            laycan shall be deemed to be amended in accordance with
            owners request.
        e)  line 1/2/3 delete from "line 1 "after" to line 3 "also"
            delete as of "under no circumstances..." till end of para
        f)  delete
        g)  delete
        h)  delete
        i)  after "as presented" insert "provided lawful and no
            discrepancy between ship/shore figures and all relevat
            detail duly filled in"
        k)  add at the end "provided competitive in line with port
            tariffs"

cl 03   eligibility clause
        line 1 after "that" insert "to the best of their knowledge"
        line 17 after "resulting" insert "directly"
        line 18 after "all" insert direct

cl 05   lightering / sts clause - delete and insert:
        charterer's option to perform sts operation at a safe place,
        however always subject to owner's/master's approval. any
        transshipment operation to conform to standard not less than
        those set out in the latest edition of ics/ocimf sts guide -
        petroleum with isgott requirements and owner  undertakes that
        the vessel and her crew will comply with such recommendations.

        charterers shall provide and pay for all necessary  equipment,
        including fenders, hoses, anchorage due and agency fees. owners
        shall permit supervisory  personnel nominated by charts to
        attend on board, always at chart's risk and expense, including
        mooring master, to assist in the transshipment operation. all
        time from vessel arrival at sts location until departure from
        sts location to count as full laytime, or as time on demurrage
        if on demurrage, weather and/or sea conditions permitting
        or not. charterers shall not have the benefit of six hours
        notice.
        if required, charterers and or their suppliers shall arrange at
        their expense and time all necessary  ship-to-ship permits and
        licenses which shall be provided to owners  prior commencement
        of ship-to-ship operations.

        all port charges, including anchorage dues and agency fee(s) at
        any sts/lighterage location to be for charterer's account and
        settled directly by them, unless covered in freight by
        worldscale charterers shall be responsible for damage to the
        vessel resulting form the lighterage operation except in the
        case of neglience on the part of the owners (s), master and/or
        crew.

cl 06   diversion clause
        line 8 insert after "expense" "(including but not limited cost
        of bunkers, canal tolls, agents expenses)"
        line 9 insert after "charterers" "revised"
        line 12 insert after "charter" "and paid along with freight
        against masters's statement, owners invoice and copies of
        available supporting documents"

cl 07   blending clause and cl 08 discharge reload clause both deleted
        insert the following:-

interim/blending/reload clause for lumpsum and ops only
--------------------------------------------------------
base freight is payable basis 1st loadport to final discharge
port. charterers to pay for additional interim load or
discharge port(s) at cost i.e. the difference between actual
steaming time performed and a theoretical direct passage (at
stipulated c/p speed) from first load port to final discharge
port. port time to count in full from arrival pilot station
interim load and/or discharge port(s) until dropping last
outward pilot at interim load and/or discharge port(s), i.e.
no allowance for notice time, nor deduction for shifting even
from anchorage to first berth and no deduction for time lost
due to tide, sea and weather conditions. deviation and port
time used to be calculated at demurrage rate per day or pro
rata plus cost for additional bunkers ifo+mdo consumed at
f.i.f.o. as per master's statement. deviation, port time used,
bunkers consumed and port costs as per agents disbursement
account to be paid together with freight as per owner's
invoice, which later to be supported by hard copy
documentation. time bar provisions of this c/p not to apply to
port expenses incurred at interim load/discharge port(s).
commissions shall be payable on time only.

for both blending clauses master to issue a lop if sample not
placed on board.

discharge/reload
charterers have the option under this clause to call 1 safe
port enroute to final discharge to part discharge, then
reload / blend always for final discharge within range agreed.
such operation, however,shall always be subject to
owners/master's approval which not to be unreasonably
withheld.

1.charterers agree to fully indemnify and hold owners harmless
  against all consequences arising as a result of charterers'
  request to perform the said cargo operation(s), and for the
  issuance of separate set(s) of bill(s) of lading for
  parcel(s) loaded.

2.if tank washing is required, time and cost for washing
  and/or deslopping to be for charterers' account. tank
  cleaning can only be conducted when vessel is completely
  free of cargo.

3.at original loadport one set of all samples (shore,
  tank/composite ship samples) to be placed on board before
  departure. if any subsequent blending/load on top is carried
  out as per charterers'instructions, blended product samples
  shall be placed on board before final discharge. any time
  lost waiting for such samples to be placed onboard shall be
  for chrts' account.

cl 09   ppd clause delete

cl 10   in-transit loss clause
        line 2 delete "0.25" insert "0.4"
        line 3 delete "deduct" insert "claim"
        add at the end "transit loss is defined as the difference
        between vessel's temperature adjusted gross volume after
        loading and before unloading at the discharging port(s).
        unpumpable cargo shall not constitute an actual loss.

cl 11   clean ballast clause
        line 5 insert after "any" "direct"
        line 6 insert "nonconcurrent" before "deballasting"

cl 12   pumping clause
        line 2 insert after "or" "is" and after "maintaining" "an
        average"

4

line 3 delete "manifold" insert "ship's rails"
line 4 after "permit" insert "(excluding while stripping or
crude oil washing)"
line13 insert after "terminal" "provided such signatures
easily available
line14 after "manifold" insert "internal"

cl 13    nor clause
         delete and insert "nor tendered when vessel has arrived at
         customary anchorage, waiting area or pilot station to be
         considered as only one valid"

cl 14    eta clause
         line 3 insert after "ports" "as applicable"
         line 5 insert after "pors(s)" directly

cl 15    awaiting cargo documents clause
         line 2 after "account" "thereafter for charterers account"

cl 16    waiting for orders clause
         delete and insert "such waiting to be for maximum 72 hrs, if
         vessel is required to deviate to a safe waiting place then
         such deviation time and bunkers to for charterers account.

cl 17    adherence to voyage instructions
         line 2 insert after "owners" "provided lawful and in
         compliance with the charter party"
         line 3 before "result" insert "direct"
         line 4 after "account" "in case charterers voyage instructions
         are in conflict with the terminal instructions then any time
         resolving the issue to be for charterers account"

cl 18    exxon early loading clause
         line 2 after delete "all" insert "half"
         line 4 afert "count" insert "from" and after "berth" insert
         "till commencement of laycan"

cl 19    free pratique clause
         delete "laytime should commence to count earliest upon
         receiving of official
         "free pratique", i.e. upon berthing/clearing, whichever
         latest" insert "if "free
         pratique" not granted timely then any time lost to be for
         owners account"

cl 20    excess berth occupancy
         line 4 insert after "direct" "or indirect"

cl 21    hose connections
         line 2 delete "crew" insert "owners"

cl 22    claims clause
         line 7 delete "sixty" insert "ninety"
         line 9 insert after "provide" "relevant"
         line10 insert after "respectively "(provided such signatures
         easily available)"
         line13 insert after "with" "relevant" and after "documents"
         delete "sufficent"
         line18 add after "facts" "provided available to owners"
         line23 insert after "terminal" "(if such signatures easily
         available)"
         line27 delete "one year" insert "13 months" delete after
         "discharge" "or the date when discharge should have been
         completed"
         delete last para "this clause does not apply to claims for
         damage, loss or short deliveries of cargo"

cl 23    bill of lading clause
         delete and insert as follows:
         charterers will issue l.o.i. as per owners p&i club wording to
         indemnify owners for discharge at a point othen than mentioned

on bill of lading.
owners agree to instruct the master to discharge the cargo
against one set of original bills of lading. in this event all
other orginal bills of lading shall be null and void.
if such bill of lading has been placed on board the vessel at
load port, master shall sign receipt for same and release
cargo to named receivers via appointed agents
at discharge port, then owners to permit discharge against
owners p&i club wording and such letter to be signed by
charterers.
p and i club wording is to include clause cancelling the loi
against presentation original bill of lading or of 3/3
originals bills of lading and owners' undertaking to
return 2/3 originals bills of lading plus owners receipt for
1/3 original bill of lading markings such bills of lading
''voyage accomplished null
and void'' or after 36 (thirtysix) months after completion of
discharge, whichever occurs first, provided that no legal
proceedings have been instituted against owners within such 36
(thirtysix) months.

cl  24   canal clause delete n/a

cl  25   compliance clause delte n/a

cl  26   part cargo clause
         line 1 delete "option to pro rata (if fixed on a ws basis)
         insert "charterers to pay freight at 50% of agreed
         freight rate.

cl  28   overage insurance clause delete n/a

cl  29   bunker survey clause
         line 4 insert after "time" "and expenses (including cost of
         bunkers)"

cl  30   heating clause
         line 2 insert "135 degree fahrenheit"
         cl 30 delete except 1st para  and insert
         in case cargo is loaded at temperature lower than 135 deg f
         charterers have the option to order vessel to increase cargo
         temperature but upto max 135 deg f.charterers to pay for
         bunkers consumed for heat up at cost (owners to provide
         documentation if requested)

cl  31   inert gas gauging clause
         delete and insert vessel is equpped with closed gauging /
         sampling system

cl  33   speed clause
         line 1 delete "warrant" insert "advise"
         line 2 after "average" insert "laden speed of about 13.5
         knots wsnp"

cl  34   derrick clause
         delete and insert as per q88

cl  35   delete

cl  36   delete

cl  38   cargo retention clause
         line 1 after "any" insert "hydrocarbon"
         line 3 delete "deduct from freight" insert "claim from owners"

         line 6 after "pumpable" insert "and reachable by vesssels
         fixed equipment"
         delete as of "if vessel... till of the parties"
         add at the end "and shall be jointly appointed and equally
         paid by owners and charterers"

```
cl 39   hess shifting/deballasting clause
        line 1 insert after "shifting" "time and expenses (including
        cost of bunkers)"

cl 41   itf clause
        line 2 after "any" insert "direct"

cl 43   bimco isps clause (unamended)

cl 44   cleaning clause
        line 2 insert after "charterers" "intended cargo of fuel oil"
        line 3 after "satisfaction" insert "if charterers inspector is
        unsatisfied, an independent inspector shall be jointly
        appotinted and paid for by owners and charterers basis 50/50."

cl 45   cow operations clause
        line 4 after "charterers" insert "or any relevant authority,
        the"

cl 46   weather clause delete and insert
        notwithstanding the provision of any other paragraph of this
        clause, or any other clause of this charter party to  the
        contrary, if vessel loads or discharges at north west
        australia, timor sea, kumul, chinese off shore terminals, ras
        shukeir, north sea terminals, ravenna, ancona, la nouvelle,
        fiumicino, falconara, milazzo, gaeta, scotland, algeria,
        morocco, spanish and/or portuguese atlantic ports, and/or if
        lightening / lightering / transhipment takes place at any
        location and/or if vessel discharges via sea line and/or
        terminals not protected by breakwater, any delays due to
        weather and/or swell to count as full laytime or, if the
        vessel is on demurrage, as full time on demurrage, and any
        resultant expenses and  time for unberthing/re-berthing to be
        for charterers' account should the master, pilot or any local
        authority deem it neccessary to have tugs standing-by,
        shift the vessel, or require any other additional equipment or
        services to maintain the safety of the vessel and/or
        mooring equipment, then any and all additional expenses
        incurred to be for chrtrs acct.

cl 47   commission clause
        delete "all monies earned" insert
        "freight/deadfreight/demurrage"

cl 51   war risk clause
        owners shall effect war risks insurance in respect of the hull
        and machinery of the vessel  and their other interests
        (including, but not limited to, loss of earnings and detention
        and their protection and indemnity risks), and the basic
        premiums and/or calls therefore shall be for owners' account.

        war risks insurance additional premiums, crew war bonus and
        insurance, and additional expenses directly incurred as a
        result of the vessel entering an excluded area shall be for
        charterer's account, net of all discounts or rebates
        received by owners and provided always that charterers are
        given an indication of the expected additional premium as soon
        as possible.

        the benefit of discounts or rebates on additional premium
        received by owners from their war risks insurers, underwriters
        or brokers shall be credited to charterers in full.
        charterers shall reimburse owners any amounts due under this
        clause upon receipt of owners' invoice together with
        reasonable supporting documentation including all associated
        debit and credit notes (if any).

        for the avoidance of doubt any specific "blocking and
        trapping", "loss of profit", "loss of hire",  "loss of
        freight", or "loss of bunkers" insurance taken out by owners
        in respect of the vessel, and any additional premium relating
```

thereto arising from charterers' trading of the vessel shall
be for owners' account.

cl  52  third party arrest clause
        line 3 delete "fault" insert "neglience on part of owner"

cl  54  delete and insert
        laytime/demurrage clause
        notwithstanding the provision of any other paragraph of this
        clause,or any other clause of this charter party to the
        contrary,the following time shall  not count as laytime or,
        if the vessel is on demurrage, as time on demurrage as per
        charter party agreement

        a.all time between early arrival nor at load port,and 0600
        (local time) on the first day of laydays or all fast of
        loading,whichever first occurs, inless charterers grant
        approval beforehand.

        b.all shifting time from anchorage to first berth or sts
        lightering site.

        c.all time spent discharging ballast water or slops,unless
        concurrent with cargo operations.

        d.all time lost waiting custom,immigration clearance and
        pratique.

        e.all time lost due to improper operation of the insert gas
        system.

        f.all time for bunker the vessel,taking or discharging ballast
        water,discharging slops or vessel generated wastes,
        reconfiguring barges in a tow,cleaning vessel
        compartments,unless concurrent with cargo operations.

        g.all time spent for excess berthing,and expenses for such
        soley for vessels purpose

        h.all time for delay for non compliance with law and
        regulations warranty and insurance compliance.

owners additonal clauses
=========================

-general strike clause
 all delays in australia/india/nigeria/france/spain/scandinavia due to
 strike or lockout or restraint of labour to count as full laytime or
 as demurrage if the vessel is on demurrage.
 time shall not count when strike is of vessel's master, officers or
 crew.

-c/p administration clause
 the charter party terms and conditions are evidenced by the broker's
 fixture confirmation recap ('recap'). both owner and charterer have
 three working days to makea any corrections to the recap, failing
 which the recap will be considered as the binding contract.
 there will be no formal written and signed charter party

-taxes/dues clause
 taxes and/or dues on cargo and/or freight to be for charterer's
 account.

 notwithstanding the provision of any other paragraph of this clause,
 or any other clause of this charter party to the contrary , no time
 bar to apply on claims brought under this clause.

-turkish straits clause
 any delay in passing the turkish straits (dardanelles and bosporous)
 northbound and southbound in excess of 48 hours accumulated to be for
 charterers account and to count at usd 25,000 pdpr plus the cost of

bunkers consumed during such additional time together with any
additional expenses incurred during such period to be for charterers'
account and to be payable against owners invoice with
available supporting documents together with the the freight. owners
to appoint their agents, when passing the turkish straits

notwithstanding anything elsewhere herein contained, in case the
vessel is not able to arrive at loadport by the cancelling date due
to delay in passing turkish straits, charterer's option to cancel
as provided elsewhere herein can not be exercised. owner to notify
charterer of the date and time that they expect the vessel to be
ready to load based on the advisory position given by the traffic
control.

-2.5 add comm (as per clause 47) plus 1.25 to braemar seascope ltd on
frt/ddfrt/dem

+++
end of recap
+++

trust you find the above in order and many thanks for your continued
support...

brgds
jason gillott
braemar seascope ltd

yahoo id 'jasongillott'
tel   : +44 207 535 2626
mob   : +44 7785 384937
email : tankers@braemarseascope.com

This e-mail and any attachments are strictly confidential and intended
for the addressee only.  If you are not the named addressee you must not
disclose, copy or use the information contained herein and you should
notify the sender as soon as possible.  Any views expressed in this
message are those of the individual sender and not of Braemar Seascope
Ltd., except where the message states otherwise.  This e-mail and any
attachments are believed to be free from viruses but it is your
responsibility to carry out all necessary virus checks.  Braemar
Seascope Ltd. accepts no liability for any damage caused by any virus
transmitted by this e-mail. Please note that replies to this email
address are treated as confidential but may be made accessible by, or
distributed to, any member of staff within the Braemar Seascope Group.

Registered in England No 1020997 : VAT Registration No 503295565.

PALMYRA SHIPPING AND CHARTERING LTD
ADDITIONAL CLAUSES TO "ASBATANKVOY" CHARTER PARTY (CHARTERING TERMS
EFFECTIVE 15th SEPTEMBER 2004)

**1 - ASBATANKVOY CHARTER PARTY**

a) LAYTIME  EIGHTY FOUR (84) HOURS SHINC

b) GENERAL AVERAGE/ ARBITRATION LONDON, ENGLISH LAW-YORK / ANTWERP RULES 1974 AS AMENDED 1990 AND 1994 TO APPLY

c) **PART II CLAUSE 4A** ADD: CHARTERERS HAVE THE OPTION OF ORDERING THE VESSEL TO A  NAMED PORT FOR ORDERS.

d) **PART II CLAUSE 5** INSERT '0600 LOCAL TIME' ON THE FIRST LINE AFTER THE WORD 'BEFORE'. INSERT AT THE END OF THE CLAUSE 'IF HOWEVER, CHARTERERS DO NOT EXERCISE SUCH OPTION AND THE VESSEL ARRIVES AFTER THE CANCELLING DATE STIPULATED IN PART 1 B., LAYTIME SHALL COMMENCE UPON THE VESSELS COMMENCED LOADING. CANCELLATION OR FAILURE TO CANCEL SHALL BE WITHOUT PREJUDICE TO ANY CLAIM THAT CHARTERER'S MAY HAVE AGAINST THE OWNERS.

e) **PART II CLAUSE 6** AFTER 'HOWEVER' INSERT 'IRRESPECTIVE OF WHETHER THE BERTH IS AVAILABLE AND REACHABLE ON ARRIVAL OR NOT. ALSO ADD AT THE END OF LAST SENTENCE: "OR DEMURRAGE". ADD AT THE END " IN ANY EVENT CHARTERERS SHALL HAVE  THE BENEFIT OF SIX HOURS NOTICE OF READINESS AT ALL PORTS OF LOADING AND DISCHARGE EVEN THOUGH THE VESSEL MAY BE ON DEMURRAGE. UNDER NO CIRCUMSTANCES WILL LAYTIME COMMENCE BEFORE 0600 HOURS ON THE FIRST DAY OF THE LAYDAYS UNLESS VESSEL BERTHED BEFORE THAT TIME " ALSO ADD AT THE END OF LAST SENTENCE: "OR DEMURRAGE."

f) **PART II CLAUSE 7** ADD IN EACH INSTANCE, AFTER 'USED LAYTIME' : 'OR TIME ON DEMURRAGE'. LAST SENTENCE, AFTER 'BERTH' INSERT 'AND TIME AWAITING DAYLIGHT, TIDES, TUGS, PILOT, CUSTOMS, SANITARY IMMIGRATION AND FREE PRATIQUE'. ADD AT THE END OF LAST SENTENCE: "OR DEMURRAGE".

g) **PART II CLAUSE 8** AFTER 'STORM' INSERT 'BAD WEATHER, FOG' ADD AFTER: "... OR PRO-RATA FOR PART OF AND HOUR FOR DEMURRAGE SO INCURRED" THE FOLLOWING: "AND TO APPLY WHETHER THE VESSEL IS ON DEMURRAGE OR NOT".
ADD AT THE END : 'THE REDUCTIONS AND EXCEPTIONS CONTAINED IN THIS CLAUSE TO APPLY WHETHER OR NOT THE VESSEL IS LOADING OR DISCHARGING BY STS TRANSFER.'

h) **PART II CLAUSE 9** LINE 1 DELETE "REACHABLE ON HER ARRIVAL"

i) **PART II CLAUSE 20(A)** DELETE "IN THE FORM APPEARING BELOW" AND SUBSTITUTE "AS PRESENTED". THE PRINTED BILL OF LADING FORM IS DELETED.

j) **PART II CLAUSE 20 (III)** DELETE '1950' AND INSERT '1974 AS AMENDED 1990 AND 1994'

2

k) **PART II CLAUSE 22**, DELETE AND SUBSTITUTE: "OWNERS TO APPOINT AGENTS NOMINATED BY CHARTERERS AT BOTH LOADING AND DISCHARGE PORTS INCLUDING SAMPLING".

2 - **WORLDSCALE CLAUSE**: WORLDSCALE TERMS AND CONDITIONS AS IN EFFECT ON DATE OF THIS CHARTER PARTY TO APPLY.(EXCEPT WHERE LUMPSUM FREIGHT IS USED)

3 - **ELIGIBILITY CLAUSE**: OWNERS WARRANT THAT THE VESSEL IS IN ALL RESPECTS ELIGIBLE AND NOT BLACKLISTED OR PREVENTED FOR ANY REASON WHATSOEVER FOR TRADING TO THE PORTS AND PLACES SPECIFIED WITHIN THIS CHARTER PARTY, AND THAT AT ALL TIMES SHE SHALL COMPLY WITH AND HAVE ON BOARD ALL CERTIFICATES, RECORDS AND OTHER DOCUMENTS REQUIRED FOR SUCH SERVICE AND AS AMENDED BY:
- ARTICLE VII OF THE INTERNATIONAL CONVENTION OF CIVIL LIABILITY, FOR OIL POLLUTION DAMAGES OF 1969 (CLC CERTIFICATE)
- SOLAS SAFETY CONSTRUCTION AND SAFETY EQUIPMENT CERTIFICATE.
- INTERNATIONAL MARITIME ORGANISATION (IMO)
- ISM CERTIFICATE (AS FROM 1ST JULY 1998)
- ISPS CERTIFICATE (AS FROM 1ST JULY 2004)
IN THE EVENT THAT THE VESSEL DOES NOT MEET ANY OF THE ABOVE REQUIREMENTS  CHARTERERS/SUPPLIERS/RECEIVERS MAY REFUSE TO BERTH, DISCHARGE OR CONTINUE TO DISCHARGE WITHOUT PENALTY AND/OR ANY DELAY RESULTING THEREFROM SHALL NOT COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE AS TIME ON DEMURRAGE AND OWNERS SHALL INDEMNIFY CHARTERER(S) FOR ANY/ALL DAMAGES OR EXPENSES INCURRED AS A CONSEQUENCE OF ANY SUCH BREACH.

4 - **CAST IRON**: OWNERS WARRANT THAT ALL RISER VALVES AND FITTINGS, OUTBOARD OF THE LAST RIGID SUPPORT TO THE VESSELS DECK, THAT ARE USED IN THE TRANSFER OF CARGO OR BALLAST, WILL BE MADE OF STEEL OR NODULAR IRON AND THAT ONLY ONE STEEL SPACER OR REDUCER WILL BE USED BETWEEN THE VESSELS MANIFOLD AND THE LOADING ARM. THE FIXED RIGID SUPPORT MUST BE DESIGNED TO PREVENT BOTH LATERAL AND VERTICAL MOVEMENT OF THE TRANSFER MANIFOLD. NO HOSES OF ANY SORT WHETHER INBOARD OR OUTBOARD OF THE LAST FIXED RIGID SUPPORT WILL BE USED FOR THE TRANSFER OF CARGO OR BALLAST.

5 - **LIGHTERING/STS CLAUSE**: IF LIGHTERING/STS IS REQUIRED AT ANY DESIGNATED PORT, SAFE PLACE, OR ANCHORAGE, TIME CONSUMED PERFORMING THIS OPERATION, (INCLUDING BACK-LOADING) SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE IN EITHER EVENT, TIME SHALL COMMENCE SIX (6) HOURS AFTER ANCHORING OR WHENEVER THE LIGHTERING CRAFT IS ALL SECURE ALONGSIDE, WHICHEVER OCCURS FIRST. THE ANCHORAGE, STS OR LIGHTERAGE AREA SHALL NOT BE CONSIDERED AS AN ADDITIONAL PORT OR BERTH. ANY RUNNING TIME FROM SUCH LIGHTERING AREA TO BERTH SHALL NOT COUNT AS LAYTIME OR TIME ON DEMURRAGE.

6 - **DIVERSION CLAUSE**: NOTWITHSTANDING ANYTHING ELSE TO THE CONTRARY IN THIS CHARTER PARTY, AND NOTWITHSTANDING WHAT LOADING AND/OR DISCHARGING PORTS HAVE BEEN NOMINATED AND BILLS OF LADING ISSUED, DISCHARGE PORT(S) SHOWN IN THE BILLS OF LADING NOT TO CONSTITUTE A DECLARATION OF DISCHARGE PORT(S), NOR AN EXERCISE OF OPTION. CHARTERER SHALL HAVE THE RIGHT TO CHANGE HIS NOMINATION OF LOADING AND/OR DISCHARGE PORTS IN ACCORDANCE WITH PART I CLAUSES C AND D HEREOF. ANY EXTRA TIME AND EXPENSE INCURRED BY OWNER IN COMPLYING WITH CHARTERER'S ORDERS SHALL BE FOR CHARTERER'S ACCOUNT AND CALCULATED IN ACCORDANCE WITH PART II CLAUSE 4(C) OF THIS CHARTER. FREIGHT SHALL BE PAID ON THE BASIS OF THE VOYAGE ACTUALLY PERFORMED. CHARTERERS SHALL HAVE THE RIGHT TO MAKE AS MANY CHANGES AS THEY SEEM NECESSARY.

7 - **BLENDING CLAUSE** : CHARTERERS SHALL HAVE THE RIGHT TO COMMINGLE/BLEND CARGO IN VESSEL'S TANKS SUBJECT TO SHIP'S SAFETY AND MASTER'S DISCRETION AND

3

MASTER TO EXECUTE THIS OPERATION AS PER CHARTERERS' INSTRUCTIONS. CHARTERER INDEMNIFIES THE OWNER, VESSEL AND MASTER AGAINST LIABILITY FOR ANY CARGO QUALITY CLAIMS THAT MAY ARISE AS A DIRECT RESULT OF THIS ONBOARD BLENDING, INCLUDING CARGO QUALITY CLAIMS FROM A THIRD PARTY.

ANY ADDITIONAL CHARGES THAT RESULT DIRECTLY FROM CHARTERER EXERCISING THIS ONBOARD BLENDING OPTION, INCLUDING DEMURRAGE, PORT CHARGES, EXTRA AGENCY FEES, CONSUMED BUNKERS AT DOCUMENTED REPLACEMENT COSTS, ETC., AND WHICH ARE NOT INCLUDED IN THE FREIGHT AGREED UNDER PART I OF THIS CHARTER PARTY, SHALL BE FOR CHARTERER'S ACCOUNT. CHARTERER WILL SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE UNBLENDED CARGO AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF LADING ON COMPLETION OF BLENDING OPERATIONS, WHICH BILLS OF LADING WILL REFLECT THE ACTUAL GRADE THAT HAS BEEN BLENDED BUT IF IT IS NOT POSSIBLE TO GIVE BACK TO MASTER OR OWNERS THE OLD BILLS OF LADING, CHARTERERS WILL GIVE THE OWNERS A LETTER OF INDEMNITY (AS PER OWNER'S WORDING, NO BANK GUARANTEE), VESSEL WILL PROCEED AS ORDERED, DISCHARGE AS INSTRUCTED, AND NEW BILLS OF LADING WILL BE ONLY ISSUED ONCE THE OLD ONES BACK IN OWNER'S HANDS. ALTERNATIVELY THE BLENDING OPERATION TO BE NOTED IN THE EXISTING BILLS OF LADING WITHOUT ANY REISSUANCE OF NEW SET.

8 - DISCHARGE/RE-LOAD CLAUSE : CHARTERERS SHALL HAVE THE OPTION TO TOP OFF AND/OR DISCHARGE IN ONE SAFE PORT AND/OR BLEND AND/OR RELOAD PART OR FULL CARGO AT SAME PORT WHICH MAY DIFFER IN QUALITY FROM THE ORIGINAL CARGO LOADED, FOR FURTHER DISCHARGE WITHIN THE AGREED GEOGRAPHICAL RANGES. CHARTERERS SHALL REIMBURSE OWNER FOR ANY ADDITIONAL TIME USED FOR DEVIATION AND IN PORT (EXCEPT FOR DELAYS DUE TO VESSEL'S BREAKDOWN AND/OR FAILURE) AT THE AGREED CHARTER PARTY DEMURRAGE RATE, PORT CHARGES, BUNKERS CONSUMED, CLEANING AND/OR OTHER ADDITIONAL EXPENSES INCURRED IN THE PERFORMANCE OF THIS CLAUSE, LIMITED, HOWEVER, TO EXPENSES WHICH EXCEED THOSE OWNER SHOULD HAVE INCURRED IN THE PERFORMANCE OF THE BASIS VOYAGE. DEVIATION TIME AT SEA SHALL BE CALCULATED BASED ON THE BP WORLDWIDE MARINE DISTANCE TABLES AT THE AGREED MINIMUM CHARTER PARTY SPEED. DISCHARGE / RELOAD PORT(S) OR LOCATION(S) SHALL NOT COUNT AS ADDITIONAL LOAD OR DISCHARGE PORT(S) OR LOCATION(S).

CHARTERER WILL SURRENDER TO MASTER ALL ORIGINAL BILLS OF LADING FOR THE UNBLENDED CARGO AND THE MASTER WILL PROVIDE NEW CONSOLIDATED BILLS OF LADING ON COMPLETION OF BLENDING OPERATIONS, WHICH BILLS OF LADING WILL REFLECT THE ACTUAL GRADE THAT HAS BEEN BLENDED BUT IF IT IS NOT POSSIBLE TO GIVE BACK TO MASTER OR OWNERS THE OLD BILLS OF LADING, CHARTERERS WILL GIVE THE OWNERS A LETTER OF INDEMNITY (AS PER OWNER'S WORDING, NO BANK GUARANTEE), VESSEL WILL PROCEED AS ORDERED, DISCHARGE AS INSTRUCTED, AND NEW BILLS OF LADING WILL BE ONLY ISSUED ONCE THE OLD ONES BACK IN OWNER'S HANDS. ALTERNATIVELY THE BLENDING OPERATION TO BE NOTED IN THE EXISTING BILLS OF LADING WITHOUT ANY REISSUANCE OF NEW SET.

9 - POUR POINT DEPRESSANT CLAUSE : CHARTERER'S SHALL HAVE THE OPTION TO PERFORM POUR POINT DEPRESSANT. CHARERER'S OPTION TO CALL LAVRION OR CHIOS OR ANOTHER PORT OR SAFE ANCHORAGE ENROUTE TO DISPORT TO EFFECT CARGO PPD OPERATION, WHICH SHALL BE CARRIED OUT IN ACCORDANCE WITH CHARTERER'S INSPECTOR INSTRUCTIONS. DEVIATION PLUS TIME PLUS EXPENSES (INCLUDING PORT COSTS, IF ANY) FOR THIS OPERATION TO BE FOR CHARTERER'S ACCOUNT. CHARTERERS HEREBY HOLD OWNERS HARMLESS FROM CLAIM WHICH MAY BE MADE AGAINST THEM FOR CHANGES IN CARGO QUALITY/QUANTITY DUE TO ABOVE OPERATION.

10- IN TRANSIT LOSS CLAUSE : OWNERS WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF ANY IN TRANSIT LOSS, IF ANY IN TRANSIT LOSS EXCEEDS 0.25 PERCENT AND CHARTERERS WILL HAVE THE RIGHT TO DEDUCT FROM FREIGHT AN AMOUNT EQUAL TO THE FOB PORT OF LOADING VALUE OF SUCH LOSS PLUS FREIGHT AND INSURANCE DUE WITH RESPECT THERETO.

4

11- **CLEAN BALLAST CLAUSE:** VESSEL TO ARRIVE AT LOAD PORT WITH CLEAN BALLAST. NO FREIGHT ON SLOPS, OR DEADFREIGHT CAUSED BY SLOPS. BALLASTING/DEBALLASTING TIME NOT TO COUNT EVEN IF ON DEMURRAGE UNLESS CONCURRENT WITH LOADING/DISCHARGING OPERATIONS. ANY EXPENSES AND/OR TIME LOST AS A RESULT OF THE VESSEL FAILING TO COMPLETE DEBALLASTING OPERATIONS WITHIN A PERIOD OF 6 HRS SHALL BE BORNE BY THE OWNERS.

12- **PUMPING CLAUSE:** OWNERS WARRANT THAT THE VESSEL IS ABLE TO DISCHARGE THE ENTIRE CARGO WITHIN TWENTY-FOUR HOURS OR CAPABLE OF MAINTAINING A BACKPRESSURE OF 100 P.S.I (7.0 KG/SQ.CM) AT THE MANIFOLD PROVIDING SHORE FACILITIES PERMIT. IN CASE THE VESSEL FAILS TO COMPLY WITH THE ABOVE SAID REQUIREMENT , OWNERS TO PAY FOR ANY OVERTIME EXPENSES, EXPENSES TO CHARTERERS' AND/OR OTHERS' SURVEYORS OR TO RECEIVERS, EXCESS QUAY DUES AND WHARFAGES AND PORT DISBURSEMENTS AT UNIFORM TARIFFS RULING AT EACH PORT OF DISCHARGE AS PER THE ORIGINAL INVOICES PRESENTED. IF SHORE FACILITIES DO NOT PERMIT DISCHARGE WITHIN THE AGREED TIME, THEN MASTER TO ISSUE A LETTER OF PROTEST AND TO HAVE SAME COUNTER-SIGNED BY THE TERMINAL SHOWING MANIFOLD PRESSURE, PUMP ROOM PRESSURE AND RPM ANY INTERNAL STRIPPING AND ANY START/STOP TIME.

IF VESSEL FAIL TO MAINTAIN ITS PUMPING WARRANTIES OR NEED TO BE REPAIRED AND AS A RESULT OF SUCH CAUSES AND EVENTS THE VESSEL LOSES ITS TURN TO BERTH, LAYTIME AND DEMURRAGE SHALL BE SUSPENDED UNTIL REGAINS THE SAME BERTHING POSITION. IF SUCH CAUSES OR EVENTS OCCUR WHILE VESSEL IS IN BERTH, EXTRA EXPENSES THEREBY INCURRED BY CHARTERERS IN CONNECTION WITH THE VESSEL REMAINING AT THE BERTH SHALL BE FOR OWNERS' ACCOUNT AND CHARTERERS SHALL ALSO HAVE THE OPTION TO ORDER THE VESSEL OUT OF BERTH, SO AS TO AVOID DELAY TO OTHER VESSEL WAITING TO USE THE BERTH, WITH THE COST OF UNBERTHING AND REBERTHING FOR THIS PURPOSES TO BE FOR OWNERS' ACCOUNT. TIME LOST IN BETWEEN BERTHING SHALL NOT COUNT AS LAYTIME OR DEMURRAGE.

13- **NOR CLAUSE :** NOR TENDERED WHEN VESSEL IS ANCHORED AT CUSTOMARY ANCHORAGE TO BE CONSIDERED AS ONLY ONE VALID.

14- **ETA CLAUSE:** VESSEL TO GIVE ETA NOTICES IN ACCORDANCE WITH CHARTERER'S VOYAGE INSTRUCTIONS AND AT LEAST 96/72/48/24/12 HOURS PRIOR ARRIVAL AT LOAD AND DISCHARGE PORTS. WHEN SUCH ETA NOTICES ARE NOT GIVEN, ANY DELAY AT EITHER LOAD OR DISCHARGE PORT(S) RESULTING FROM ETA NOTICES NOT BEING SENT TO BE FOR OWNERS' ACCOUNT EVEN IF VSL IS ALREADY ON DEMURRAGE.

15- **AWAITING CARGO DOCUMENTS CLAUSE :** MAXIMUM 3 HOURS TO BE FOR OWNERS ACCOUNT

16- **WAITING FOR ORDERS CLAUSE:** CHARTERERS TO HAVE THE LIBERTY OF INSTRUCTING THE VESSEL TO WAIT FOR ORDERS AT A SAFE PLACE. TIME USED TO COUNT AS USED LAYTIME AND IF ON DEMURRAGE, AS DEMURRAGE.

17- **ADHERENCE TO VOYAGE INSTRUCTIONS:** OWNERS ARE RESPONSIBLE FOR MASTER'S /VESSEL'S NON COMPLIANCE WITH VOYAGE ORDERS GIVEN UNDER THIS CHARTER PARTY AND ANY TIME LOST AS A RESULT OF FAILURE TO COMPLY NOT TO BE FOR CHARTERERS ACCOUNT.

18- **EXXON EARLY LOADING CLAUSE:** IN THE EVENT CHARTERERS AGREE TO LOAD PRIOR TO COMMENCEMENT OF LAYDAYS, ALL SUCH TIME TO BE CREDITED AGAINST ANY TIME VESSEL IS ON DEMURRAGE. FOR PURPOSES OF THIS CLAUSE, TIME TO COUNT WHEN VESSEL IS ALL-FAST AT THE LOADING BERTH.

19- **FREE PRACTIQUE CLAUSE:** IF "FREE PRATIQUE" IS NOT GRANTED PROMPTLY UPON VESSEL ARRIVAL AT LOAD PORT OR DISCHARGE PORT BY ALL PARTIES CONCERNED,

5

OR BY MEDICAL/SANITARY OFFICER ONLY, OR VIA RADIO/VHF ONLY, MASTER
IMMEDIATELY, HOWEVER LATEST WITHIN 2 HRS FROM TENDERING NOR, TO PROTEST
IN WRITING BY TLX/CABLE TO PORT AUTHORITIES, AS STATED IN VOYAGE ORDERS,
AND OWNERS TO ATTACH SUCH PROTEST TO THEIR DEMURRAGE CLAIM, IF ANY.
LAYTIME SHOULD COMMENCE TO COUNT EARLIEST UPON RECEIVING OF OFFICIAL
"FREE PRATIQUE", I.E. UPON BERTHING/CLEARING, WHICHEVER LATEST.

20- **EXCESS BERTH OCCUPANCY**: IF AFTER THE DISCONNECTION OF HOSES, THE VESSEL
REMAINS AT BERTH EXCLUSIVELY FOR VESSEL'S PURPOSES, OTHER THAN BY REASON
OF FORCE MAJEURE, THE OWNER WILL, AT THE TERMINAL'S OPTION, BE RESPONSIBLE
FOR ALL DIRECT OR INDIRECT COSTS CHARGED TO CHARTERER BY THE TERMINAL,
THE SUPPLIERS, OR THE RECEIVERS OR ALTERNATIVELY SHALL BE REQUIRED TO
VACATE THE BERTH IMMEDIATELY UPON TERMINALS REQUEST.

21- **HOSE CONNECTIONS**: IT IS UNDERSTOOD THAT HOSE CONNECTIONS ON BOARD THE
VESSEL TO BE MADE BY OWNERS.

22- **CLAIMS CLAUSE**: CHARTERERS SHALL BE DISCHARGED AND RELEASED FROM ALL
LIABILITIES IN RESPECT OF CLAIMS OWNERS MAY HAVE UNDER THIS CHARTER PARTY
(SUCH AS, BUT NOT LIMITED TO, CLAIMS FOR FREIGHT, DEADFREIGHT, DEMURRAGE,
SHIFTING EXPENSES OR PORT EXPENSES AND/OR ANY CHARGES OR EXPENSES UNDER
THIS CHARTER PARTY) UNLESS CLAIM HAS BEEN PRESENTED TO CHARTERERS IN
WRITING WITH ALL SUPPORTING DOCUMENTS WITHIN NINETY (90) DAYS FROM
COMPLETION OF DISCHARGE UNDER THIS CHARTER PARTY. IN ALL CASES OWNERS
SHALL PROVIDE RELEVANT SUPPORTING DOCUMENTATION DULY SIGNED BY MASTER
AND
SHIPPERS/RECEIVERS RESPECTIVELY (PROVIDED SUCH SIGNATURES EASILY AVAILABLE)
OR AGENTS.

> Deleted: SIXTY
>
> Deleted: (60)
>
> Deleted: ¶

WITH RESPECT TO DEMURRAGE CLAIMS, OWNERS SHALL PRESENT ANY SUCH CLAIMS
TOGETHER WITH RELEVANT DOCUMENTS, TO SUPPORT THE CLAIM WHICH SHOULD
INCLUDE, BUT NOT BE LIMITED TO, THE FOLLOWING DOCUMENTATION :
- COMMERCIAL INVOICE
- LAYTIME STATEMENT
- NOTICE OF READINESS
- ALL STATEMENT OF FACT(S) INCLUDING THE TERMINAL STATEMENT OF FACTS
PROVIDED AVAILABLE TO OWNERS
/ TIME SHEET DULY SIGNED BY MASTER
- ALL NOTE(S) OF PROTEST ISSUED BY THE VESSEL
- ALL NOTE(S) OF PROTEST RECEIVED BY THE VESSEL
- HOURLY PRESSURE LOG RECORDED AT EACH MANIFOLD COUNTERSIGNED BY
TERMINAL (IF SUCH SIGNATURES EASILY AVAILABLE)
- ANY OTHER RELEVANT DOCUMENTATION

> Deleted: SUFFICIENT

OWNERS FURTHER AGREE THAT WITH RESPECT TO ANY CLAIM OR OTHER
UNRESOLVED DISPUTE ARISING OUT OF THIS CHARTER OTHER THAN DEMURRAGE
CLAIM, UNLESS ARBITRATION OR LITIGATION, AS PER THIS CHARTER IS COMMENCED
WITHIN (1) ONE YEAR AFTER COMPLETION OF DISCHARGE OR THE DATE WHEN
DISCHARGE SHOULD HAVE COMPLETED, SUCH CLAIM OR OTHER DISPUTE IS WAIVED
AND ALL LIABILITY WHICH RESPECT THERETO IS DISCHARGED.

THIS CLAUSE DOES NOT APPLY TO CLAIMS FOR DAMAGE, LOSS OR SHORT DELIVERY OF
CARGO.

23- **BILL OF LADING CLAUSE**: BILLS OF LADING TO BE MARKED "CLEAN ON BOARD" IF
REQUIRED BY CHARTERERS. DISCHARGE PORT SHOWN IN THE BILL OF LADING NOT TO
CONSTITUTE A DECLARATION OF DISCHARGE PORT AND CHARTERERS TO HAVE
RIGHT TO ORDER VESSEL TO ANY PORT WITHIN TERMS OF THE CHARTER PARTY.
CHARTERERS WILL ISSUE L.O.I AS PER OWNER'S P AND I WORDING TO INDEMNIFY
OWNERS AGAINST CLAIMS BROUGHT BY HOLDERS OF BILLS OF LADING AGAINST
OWNERS BY REASON OF CHANGE OF DESTINATION.
OWNERS AGREE TO INSTRUCT THE MASTER TO DISCHARGE THE CARGO AGAINST A 1/3

6

ORIGINAL BILL OF LADING. IF SUCH BILL OF LADING HAS BEEN PLACED ON BOARD
THE VESSEL AT LOAD PORT, MASTER SHALL SIGN RECEIPT FOR SAME AND RELEASE IT
TO RECEIVERS VIA APPOINTED AGENTS AT DISCHARGE PORT. IF NO SUCH ORIGINAL
BILL OF LADING IS AVAILABLE AT DISCHARGE PORT, THEN OWNERS TO PERMIT
DISCHARGE AGAINST OWNERS' P AND I CLUB WORDING AND SUCH LETTER TO BE
SIGNED BY CHARTERERS. P AND I CLUB WORDING IS TO INCLUDE CLAUSE
CANCELLING THE LOI AGAINST PRESENTATION EITHER OF 1/3 ORIGINAL BILL OF
LADING OR OF 3/3 ORIGINALS BILLS OF LADING AND OWNERS' UNDERTAKING TO
RETURN 2/3 ORIGINALS BILLS OF LADING PLUS OWNERS RECEIPT FOR 1/3 ORIGINAL
BILL OF LADING MARKING SUCH BILL OF LADING "VOYAGE ACCOMPLISHED NULL
AND VOID" OR AFTER 13 (THIRTEEN) MONTHS AFTER COMPLETION OF DISCHARGE,
WHICHEVER OCCURS FIRST, PROVIDED THAT NO LEGAL PROCEEDINGS HAVE BEEN
INSTITUTED AGAINST OWNERS WITHIN SUCH 13 (THIRTEEN) MONTHS.

24- CANAL CLAUSE: PANAMA AND SUEZ CANAL DIFFERENTIALS TO BE PAID BASIS
NEGOTIATED LUMP SUM (WHEN/WHERE APPLICABLE)

25- COMPLIANCE CLAUSE: WHERE APPLICABLE OWNERS TO COMPLY WITH:
- TRADING TO THE UNITED STATES OF AMERICA UNITED STATES OIL POLLUTION ACT
  OF 1990 (OPA-90) OWNERS WARRANT THAT
  A) THAT THEY AND/OR THE VESSEL OPERATOR HAS SUBMITTED TO THE UNITED
     STATES COAST GUARD FOR APPROVAL A RESPONSE PLAN FOR THE VESSEL (VRP)
     WHICH MEETS IN FULL THE REQUIREMENTS OF THE UNITED STATES POLLUTION
     ACT OF 1990 (OPA '90), THE USGC NAVIGATION AND VESSEL INSPECTION
     CIRCULAR NUMBER 8 OF 1992 (NAVIC 8-92) AND WITH ANY SUBSEQUENT RULES
     AND / OR REGULATIONS THAT AMEND THE REQUIREMENTS OF NAVIC 8 92, THE
     GOVERNMENT REGULATIONS ISSUED THEREUNDER AND ANY CHANGE, RULE OR
     REGULATION OF, OR SUPPLEMENTARY TO, SUCH CIRCULAR (COLLECTIVELY 'VRP
     REQUIREMENTS)
  B) THAT THE VRP IS APPROVED AND THE VESSEL IS OPERATED IN COMPLIANCE
     THEREWITH, WHEN AND AS REQUIRED BY THE VRP REQUIREMENTS.
  C) THAT THE OWNER OR OPERATOR OF THE VESSEL AND THE VESSEL FULLY MEETS
     ALL OTHER REQUIREMENTS OF OPA AND ANY GOVERNMENT REGULATIONS OR
     GUIDELINES ISSUED THEREUNDER.
  THIS CLAUSE DOES NOT IN ANY WAY LESSEN THE OVERALL EFFECT OR RELIEVE THE
  OWNERS OF ANY STATE OBLIGATIONS IN RESPECT OF VESSEL RESPONSE PLANS OR
  OTHER POLLUTION REQUIREMENTS.
- F.M.C./U.S.C.G. CERTIFICATE OF FINANCIAL RESPONSIBILITY
- U.S. COASTGUARD COMPLIANCE WHEREBY OWNER WARRANTS DURING THE TERM
  OF THIS CHARTER THE VESSEL WILL FULLY COMPLY, AND IF NOT IN COMPLIANCE
  WILL HOLD THE NECESSARY WAIVERS, WITH A ALL APPLICABLE UNITED STATES
  COAST GUARD REGULATIONS NOW IN EFFECT INCLUDING, BUT NOT LIMITED, TO,
  POLLUTION AND SAFETY REGULATIONS OF THE CODE OF FEDERAL REGULATIONS, AS
  AMENDED AND ALL OTHER APPLICABLE STATE POLLUTION AND SAFETY LAWS,
  RULES AND REGULATIONS AS MAY BE PROMULGATED AND SUBSEQUENT
  AMENDMENT THERETO.
- U.S. CUSTOMS REGULATIONS (SCAC CODE) WHEREBY OWNERS WARRANTS THAT IN
  ACCORDANCE WITH THE U.S. CUSTOMS REGULATIONS 19 CFR, SECTION 4.7A AND
  178.2, AS AMENDED, THEY HAVE STANDARD CARRIER ALPHA CODE (SCAC) WHICH
  WILL PREFIX A BILL OF LADING SERIAL NUMBER AND FORM 'A' 'UNIQUE IDENTIFIER'
  TO BE ENTERED ON ALL BILLS OF LADING, CARGO MANIFEST, CARGO DECLARATIONS
  AND OTHER CARGO DOCUMENTS ISSUED UNDER THIS CHARTER PARTY RELATING TO
  THE CARRIAGE OF GOODS TO THE UNITED STATES, CHARTERER IS NOT RESPONSIBLE
  FOR ANY LOSSES OR DELAYS RESULTING FROM OWNERS FAILURE TO COMPLY WITH
  THE FOREGOING.

  THE VESSEL IS TO HAVE VALID CERTIFICATE(S) ON BOARD COMPLYING WITH THE
  ABOVE REGULATIONS AT ALL TIMES DURING THE CURRENCY OF THIS CHARTER
  PARTY.
  OWNER TO INDEMNIFY CHARTERER OF ANY PENALTIES, COSTS OR CONSEQUENCES
  RESULTING FROM VESSELS NON-COMPLIANCE AND ANY SUCH DELAYS SHALL NOT
  COUNT AS USED LAYTIME OR TIME ON DEMURRAGE IF VESSEL IS ON DEMURRAGE.

7

26- **PART CARGO CLAUSE**: FOR ANY CARGO LOADED IN EXCESS OF THE MINIMUM
AGREED CHARTERERS OPTION TO PRO RATA (IF FIXED ON A WORLDSCALE BASIS)

27- **SAMPLING CLAUSE**: CHARTERERS SHALL BE AT LIBERTY TO ORDER THE VESSEL TO
CALL AT A PORT EN ROUTE OR APPROXIMATELY EN ROUTE FROM LOAD PORT TO
DISCHARGE PORT(S) FOR SAMPLING PURPOSES. CHARTERERS SHALL THEN PAY ALL
EXPENSES AND ALL PORT DISBURSEMENTS WHERE APPLICABLE (EXCEPT FOR
EVENTUAL SHIP/CREW SUPPLIES AND EXPENSES) AND ALL TIME LOST TO COUNT AS
USED LAYTIME OR TIME ON DEMURRAGE, IF VESSEL IS ON DEMURRAGE. CHARTERERS
WILL MAKE ACCORDINGLY DIRECT ARRANGEMENTS WITH THEIR AGENTS WHO
SHALL HANDLE SHIP'S CALL. ANY ADDITIONAL COSTS DUE TO THE VESSEL CALLING
FOR SAMPLING PURPOSES TO BE CALCULATED ACCORDING TO PART II, CLAUSE 4 C, OF
THIS CHARTER.

28- **OVER AGE INSURANCE CLAUSE**: ANY ADDITIONAL INSURANCE ON CARGO DUE TO
VESSEL'S AGE, FLAG AND/OR CONDITION, TO BE FOR OWNERS' ACCOUNT, WHICH
MAY BE DEDUCTED FROM THE FREIGHT PAYMENT.

29- **BUNKER SURVEY CLAUSE**: OWNERS ALLOW, IF REQUESTED, CHARTERERS'
INDEPENDENT INSPECTORS TO SURVEY BUNKERS ON VESSEL AT LOADING AND
DISCHARGING PORT(S), AS WELL AT EVENTUAL INTERIM PORT(S) OF CALL, WITH
EXTRA TIME, IF ANY, TO COUNT AS LAYTIME.

30- **HEATING CLAUSE**: THE OWNERS WARRANT THAT THE VESSEL IS FULLY COILED AND
UNDERTAKES TO MAINTAIN CARGO AT LOADED TEMP, BUT MAX 135F, THROUGHOUT
VOYAGE AND DISCHARGE. ONWERS FURTHER WARRANT THAT THE VESSEL IS
CAPABLE OF HEATING THE CARGO TO SUCH TEMPERATURE AS AGREED TO IN
CHARTER FIXTURE BETWEEN OWNERS AND CHARTERERS BY ABOUT 3 DEG C PER DAY,
AND SUCH TEMPERATURE IS TO BE MAINTAINED THROUGHOUT THE ENTIRE
DISCHARGE. SHOULD CHARTERERS REQUIRE VESSEL TO HEAT-UP AS ABOVE THEY WILL
REIMBURSE ONWERS USD 2'000 FOR EACH 3 DEG C OF CARGO INCREASED
TEMPERATURE. IF THE VESSEL FAILS TO MAINTAIN THE TEMPERATURE REQUIRED,
OWNER SHALL BE RESPONSIBLE FOR ANY RESULTING DELAYS AND ALL TIME LOST.
FURTHER, CHARTERERS SHALL HAVE THE RIGHT TO ORDER VESSEL TO BE WITHDRAWN
FROM BERTH AND ALL TIME AND EXPENSES INCURRED SHALL BE FOR OWNERS'
ACCOUNT.

31- **INERT GAS GAUGING CLAUSE**: IF THE VESSEL IS EQUIPPED WITH AN INERT GAS
SYSTEM AND THE CARGO COMPARTMENTS ARE INERTED, CHARTERERS OR
INDEPENDENT INSPECTORS SHALL HAVE THE RIGHT TO REQUEST THE MASTER TO
DEPRESSURIZE FOR THE PURPOSE OF SAMPLING, GAUGING, TEMPERATURE
DETERMINATION AND OR DETERMINATION OF THE QUANTITY REMAINING ON BOARD
AFTER DISCHARGE.
DEPRESSURIZATION IS TO BE CONDUCTED SAFELY IN ACCORDANCE WITH THE
PROVISIONS OF THE INTERNATIONAL SAFETY GUIDE FOR OIL TANKERS AND
TERMINALS (ISGOTT) AS ISSUED BY THE INTERNATIONAL CHAMBER OF COMMERCE
(ICC) AND THE OIL COMPANIES INTERNATIONAL MARINE FORUM (OCIMF).

32- **P AND I CLUB CLAUSE**: OWNERS WARRANT THAT THE VESSEL IS ENTERED WITH A P
AND I CLUB OF GOOD STANDING, MEMBER OF THE INTERNATIONAL GROUP OF
P&I CLUBS AND WILL REMAIN SO THROUGHOUT THE COURSE OF THE CHARTER.

33- **SPEED CLAUSE**: OWNERS WARRANT THAT THE VESSEL WILL PERFORM THIS VOYAGE
AT AN AVERAGE SPEED OF 13 KNOTS WEATHER AND SAFE NAVIGATION PERMITTING.

34- **DERRICKS CLAUSE**: VESSEL IS FITTED WITH DERRICKS CAPABLE OF LIFTING AND
SUPPORTING AT THE VESSEL'S PORT AND STARBOARD MANIFOLDS HEAVY SUBMARINE
HOSES OF UP TO ......... METRIC TONS IN WEIGHT.

35- **STERN DISCHARGE CLAUSE**: VESSEL S FITTED WITH A WORKING STERN DISCHARGE

8

SYSTEM.

36- **DYING CLAUSE:** CHARTERERS HAVE THE OPTION TO LOAD A DYED CARGO ON THE VESSEL PROVIDED DYE IS ONE WHICH IS CUSTOMARILY USED OR MANUFACTURED FOR USE IN SAID CARGO. CHARTERERS SHALL ALSO HAVE THE OPTION TO DYE THE CARGO ON BOARD OF THE VESSEL PROVIDED THIS IS CARRIED OUT OR SUPERVISED BY CHARTERER'S PERSONNEL, OR CARRIED OUT BY VESSEL'S PERSONNEL. SUCH OPERATION TO BE AT CHARTERER'S COST, AND ANY DELAY CAUSE BY DYEING SAID CARGO TO BE FOR CHARTERER'S ACCOUNT.

37- **DRUG AND ALCOHOL CLAUSE:** OWNERS WARRANT THAT IT HAS AN EXXON DRUG AND ALCOHOL POLICY OR A POLICY OF DRUG AND ALCOHOL ABUSE ("POLICY") APPLICABLE TO THE VESSEL WHICH MEETS OR EXCEEDS THE STANDARDS IN THE OCIMF GUIDELINES FOR THE CONTROL OF DRUGS AND ALCOHOL ON BOARD SHIP. OWNER FURTHER WARRANTS THAT THIS POLICY WILL REMAIN IN EFFECT DURING THE TERM OF THIS CHARTER AND THAT OWNERS SHALL EXERCISE DUE DILIGENCE TO ENSURE THAT THE POLICY IS COMPLIED WITH.

38- **CARGO RETENTION CLAUSE:** IN THE EVENT THAT ANY CARGO REMAINS ON BOARD UPON COMPLETION OF DISCHARGE. CHARTERER SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT AN AMOUNT EQUAL TO THE FOB PORT LOADING VALUE OF SUCH CARGO PLUS FREIGHT DUE WITH RESPECT THERETO, PROVIDED THAT THE VOLUME OF CARGO REMAINING ON BOARD IS LIQUID AND PUMPABLE AS DETERMINED BY AN INDEPENDENT SURVEYOR. ANY ACTION OR LACK OF ACTION IN ACCORDANCE WITH THIS PROVISION SHALL BE WITHOUT PREJUDICE TO ANY RIGHTS OR OBLIGATIONS OF THE PARTIES.
IF THE VESSEL IS EX LAY-UP, DRY DOCK OR EX DRY CARGO, A VALUE OF CARGO AS WELL AS FREIGHT AND INSURANCE FOR ANY SHORT OUTTURN CARGO QUANTITY (AS DETERMINED BY COMPARING THE BILL OF LADING QUANTITY VERSUS THE DISCHARGED QUANTITY BASIS SHORE TANK GAUGES), SHALL BE DEDUCTED FROM FREIGHT TO THE EXTENT THAT SUCH QUANTITY EXCEEDS 0.3 PERCENT OF THE BILL OF LADING QUANTITY.
ANY ACTION OR LACK OF ACTION IN ACCORDANCE WITH THIS PROVISION SHALL BE WITHOUT PREJUDICE TO ANY OTHER RIGHTS OR OBLIGATIONS OF THE PARTIES. FOR THE PURPOSES OF THIS CLAUSE ANY SURVEYOR WHO IS ISO 9002 CERTIFIED SHALL BE CONSIDERED AS ACCEPTABLE TO BOTH CHARTERER AND OWNER.

39- **HESS SHIFTING/DEBALLASTING CLAUSE:** IF MORE THAN ONE BERTH AT LOAD OR DISCHARGE PORT IS USED, SHIFTING EXPENSES TO BE FOR CHARTERERS ACCOUNT, EXCEPT THAT SHIFTING EXPENSES FROM ANCHORAGE TO FIRST BERTH WILL NOT BE FOR CHARTERERS ACCOUNT.

40- **ADDITIONAL OIL POLLUTION INSURANCE CLAUSE:** OWNERS WARRANT THAT THEY HAVE AND WILL MAINTAIN THROUGHOUT THE PERIOD OF THIS CHARTER.
A) THE STANDARD OIL POLLUTION INSURANCE COVER (CURRENTLY USD 1 BILLION) AVAILABLE FROM THEIR P AND I CLUBS, AND
B) ANY ADDITIONAL OIL POLLUTION INSURANCE COVER WHICH BECOMES AVAILABLE VIA THEIR P AND I CLUB OR THROUGH UNDERWRITER PROVIDING FIRST CLASS SECURITY.

IF REQUESTED BY CHARTERERS OWNERS TO PROVIDE CHARTERERS WITH EVIDENCE OF COVER

41- **I.T.F.CLAUSES:** OWNERS WARRANT THAT THE VESSEL/CREW WILL REMAIN IN COMPLIANCE WITH THE REQUIREMENTS OF I.T.F. OR EQUIVALENT DURING THE CURRENCY OF THIS CHARTER PARTY. ANY DELAY AND/OR EXPENSE RESULTING FROM NON-COMPLIANCE WITH THIS WARRANTY SHALL BE FOR OWNERS ACCOUNT AND TIME NOT TO COUNT AS LAYTIME OR DEMURRAGE.

42- **ISM (INTERNATIONAL SAFETY MANAGEMENT) CLAUSE :** OWNERS WARRANTS THAT A 'SAFETY MANAGEMENT SYSTEM' (SMS) IN ACCORDANCE WITH THE ISM CODE WILL

9

BE IN OPERATION THROUGHOUT THE DURATION OF THIS CHARTER. IT IS A CONDITION OF THIS CHARTER PARTY THAT ON AND AFTER JULY 1998 THE OWNER(S) OR THE COMPANY' (AS DEFINED BY THE ISM CODE) SHALL HAVE A VALID 'DOCUMENT OF COMPLIANCE' (DOC) AND THE VESSEL SHALL HAVE A VALID 'SAFETY MANAGEMENT CERTIFICATE' (SMC). UPON REQUEST THE OWNER(S) SHALL PROVIDE A TRUE COPY OF THE RELEVANT DOC AND SMS TO THE CHARTER.

45- **ISPS CLAUSE** : FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL, THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND 'THE COMPANY' (AS DEFINED BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE RELATING TO THE VESSEL AND 'THE COMPANY'. UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE CHARTERERS. THE OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER (CSO).

LOSS, DAMAGE, EXPENSE OR DELAY WHATSOEVER CAUSED BY FAILURE ON THE PART OF THE OWNERS OR 'THE COMPANY' TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNER'S ACCOUNT.

44- **CLEANING**: OWNERS WARRANT THAT VESSEL'S LINES/PUMPS, TANKS AND PUMPS SHALL BE IN ALL WAYS SUITABLE FOR LOADING CHARTERERS CARGO TO CHARTERER'S INSPECTOR'S SATISFACTION. IF VESSEL IS FOUND TO BE UNSUITABLE, SHE WILL BE CLEANED UNTIL APPROVAL IS OBTAINED FROM CHARTERER'S INSPECTOR. ANY DELAYS AND COSTS AS A RESULT OF VESSEL ARRIVING AT LOADING PORT AND NOT BEING TO CHARTERER'S SATISFACTION SHALL BE FOR OWNERS ACCOUNT. IF FURTHER CLEANING IS NECESSARY, AND IF 36 HOURS AFTER FIRST INSPECTION BY CHARTERER'S INSPECTOR
THE VESSEL IS STILL UNSUITABLE, CHARTERER SHALL HAVE THE OPTION TO CANCEL THE CHARTER PARTY.
CANCELLATION OR FAILURE TO CANCEL SHALL BE WITHOUT PREJUDICE TO ANY CLAIMS FOR DAMAGES CHARTERER MAY HAVE AGAINST THE OWNER.

45- **COW OPERATIONS CLAUSE**: OWNERS WARRANT THAT THE VESSEL IS EQUIPPED WITH A CRUDE OIL WASHING SYSTEM IN GOOD WORKING ORDER AND THAT THE MASTER, OFFICERS AND CREW ARE COMPETENT TO OPERATE SAID SYSTEM. IF REQUESTED BY CHARTERERS VESSEL SHALL PERFORM COW IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE ISC/OCIMF, IN ALL CARGO TANKS AT DISCHARGING PORT(S) SIMULTANEOUSLY WITH CARGO DISCHARGING OPERATIONS. ANY ADDITIONAL TIME SPENT BY REASON OF COW SHALL COUNT AS USED LAYTIME UP TO MAXIMUM 8 HOURS OWNERS WARRANT THAT OFFICERS AND CREW ARE EXPERIENCED IN COW OPERATION.
EXPENSES FOR COW IF ANY, TO BE FOR OWNER'S ACCOUNT.

46- **CONOCO WEATHER CLAUSE**: DELAYS IN BERTHING FOR LOADING OR DISCHARGING AND ANY DELAY AFTER BERTHING, WHICH ARE DUE TO WEATHER CONDITIONS SHALL COUNT AS ONE HALF LAYTIME OR, IF ANY DEMURRAGE, AT ONE HALF DEMURRAGE RATE.

47- **COMMISSION**: 2.50% ADDRESS COMMISSION TO PALMYRA SHIPPING & CHARTERING. LTD ON ALL MONIES EARNED (DEDUCTABLE AT SOURCE).

48- **P AND C CLAUSE**: NEGOTIATIONS AND FIXTURE TO REMAIN STRICTLY PRIVATE AND CONFIDENTIAL.

49- **SEACOCK VALVES**: SEACOCK VALVES TO BE SEALED AT LOADING PORT BEFORE COMMENCING LOADING IN PRESENCE OF CHARTERERS' REPRESENTATIVE AND SEAL NOT BE BROKEN UNTIL COMPLETION OF DISCHARGE.

50- **USUAL PROTECTIVE CLAUSES**: CHAMBER OF SHIPPING WAR RISKS CLAUSES TO APPLY

10

TO THIS CHARTER PARTY, AND ALL BILLS OF LADING ISSUED UNDER THIS CHARTER PARTY, SHALL CONTAIN THE NEW JASON CLAUSE, BOTH TO BLAME COLLISION CLAUSE AND CLAUSE PARAMOUNT.

51- **EXTRA WAR RISK CLAUSE** : OWNERS SHALL EFFECT WAR RISKS INSURANCE IN RESPECT OF THE HULL AND MACHINERY OF THE VESSEL AND THEIR OTHER INTERESTS (INCLUDING, BUT NOT LIMITED TO, LOSS OF EARNINGS AND DETENTION, THE CREW AND THEIR PROTECTION AND INDEMNITY RISKS), AND THE GENERAL PREMIUMS AND/OR CALLS THEREFOR SHALL BE FOR THEIR ACCOUNT. WAR RISKS INSURANCE ADDITIONAL PREMIUMS, IF ANY, INCURRED AS A RESULT OF THE VESSEL ENTERING AN EXCLUDED AREA (ADDITIONAL PREMIUM) SHALL BE FOR CHARTERER'S ACCOUNT, NET OF ALL DISCOUNTS OR REBATES AND PROVIDED ALWAYS THAT CHARTERER'S ARE GIVE NOTICE OF THE AMOUNT OF SUCH ADDITIONAL PREMIUM AS SOON AS POSSIBLE AND, IN ANY EVENT, BEFORE THE VESSEL HAS ENTERED THE WAR RISK AREA AND SUCH ADDITIONAL PREMIUM IS PAID. THE BENEFIT OF DISCOUNTS OR REBATES ON ADDITIONAL PREMIUM RECEIVED BY OWNERS FROM THEIR WAR RIKS INSURERS, UNDERWRITERS OR BROKERS SHALL BE CREDITED TO CHARTERERS IN FULL. CHARTERERS SHALL REIMBURSE OWNERS ANY AMOUNTS DUE UNDER THIS CLAUSE UPON RECEIPT OF OWNER'S INVOICE TOGETHER WITH FULL SUPPORTING DOCUMENTATION INCLUDING ALL ASSOCIATED DEBIT AND CREDIT NOTES. FOR THE AVOIDANCE OF ANY DOUBT ANY 'BLOCKING AND TRAPPING', 'LOSS OF PROFIT', 'LOSS OF HIRE', 'LOSS OF FREIGHT', OR 'LOSS OF BUNKER' INSURANCE TAKEN OUT BY OWNERS IN RESPECT OF THE VESSEL, AND ANY ADDITIONAL PREMIUM RELATING THERETO ARISING FROM CHARTERER'S TRADING OF THE VESSEL, SHALL BE FOR OWNER'S ACCOUNT.

FOR THE PURPOSES OF THIS CLAUSE, A WAR RISK AREA WILL BE AN AREA FOR WHICH THE HULL WAR RISK UNDERWRITERS OF THE VESSEL HAVE DECLARED AN ADDITIONAL PREMIUM TO BE DUE IN ORDER FO RTHE VESSEL'S HULL & MACHINERY TO BE FULLY COVERED AGAINST THE USUAL WAR RISKS.

52- **THIRD PARTY ARREST CLAUSE** : IN THE EVENT OF ARREST OR OTHER SANCTION LEVIED AGAINST THE VESSEL OR AGAINST OWNERS OR CHARTERERS ASSETS ARISING FROM OWNERS BREACH OR ANY FAULT OF OWNERS, OWNERS SHALL HOLD CHARTERERS HARMLESS AND INDEMNIFY THEM FOR ANY/ALL DAMAGES, PENALTIES, COSTS AND CONSEQUENCES AND ANY TIME THAT VESSEL IS DELAYED AS A RESULT SHALL FALL FOR OWNERS SOLE ACCOUNT.

53- **TEXACO ITOPF CLAUSE** : OWNER WARRANTS THAT IT IS A MEMBER OF THE INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION (ITOPF) AND THAT OWNER WILL RETAIN SUCH MEMBERSHIP DURING THE ENTIRE PERIOD OF THIS CHARTER. OWNER FURTHER WARRANTS THAT VESSEL SHALL, DURING THE PERIOD UNDE R THIS CHARTER, BE IN FULL COMPLIANCE WITH THE 1969 CIVIL LIABILITY CONVENTION (CLC), THE 1971 FUND CONVENTION (FUND CONVENTION) AND ALL ASSOCIATED PROTOCOLS AS UPDATED AND AMENDED AND THAT VESSEL HAS A VALID CLC CERTIFICATE ON BOARD.

54- **LAYTIME/DEMURRAGE CLAUSE** : NOTWITHSTANDING THE PROVISION OF ANY OTHER PARAGRAPH OF THIS CLAUSE, OR ANY OTHER CLAUSE OF THIS CHARTER PARTY TO THE CONTRARY, THE FOLLOWING TIME SHALL NOT COUNT AS LAYTIME OR, IF VESSEL IS ON DEMURRAGE, AS TIME ON DEMURRAGE AS PER CHARTER PARTY AGREEMENT
   A.   ALL TIME BETWEEN EARLY ARRIVAL NOR AT LOAD PORT, AND 0600 (LOCAL TIME) ON THE FIRST DAY
        OF LAYDAYS OR ACTUAL COMMENCEMENT OF LAODING, WHICHEVER FIRST OCCURS, UNLESS  CHARTERERS GRANTS APPROVAL BEFOREHAND;
   B.   ALL TIME SHIFTING FROM ANCHORAGE TO BERTH OR STS LIGHTERING SITE;
   C.   ALL TIME SHIFTING FROM STS LIGHTERING SITE TO ANCHORAGE OR TO BERTH;
   D.   ALL TIME SPENT DISCHARGING BALLAST WATER OR SLOPS, UNLESS CONCURRENT WITH CARGO OPERATIONS;
   E.   ALL TIME SPENT WAITING CUSTOM, IMMIGRATION CLEARANCE, AND PRATIQUE;
   F.   ALL TIME LOST DUE TO IMPROPER OPERATION OF THE INERT GAS SYSTEM;

11

G.  ALL TIME LOST DUE TO AWAITING DAYLIGHT, TIDE, FOG, TUGS OR PILOT, OR DUE TO QUARANTINE;

H.  ALL TIME FOR BUNKERING A VESSEL, TAKING OR DISCHARGING BALLAST WATER, DISCHARGING SLOPS OR VESSEL-GENERATED WASTES, RECONFIGURING BARGES IN A TOW, CLEANING VESSEL COMPARTMENTS, UNLESS CONCURRENT WITH CARGO OPERATIONS;

I.  ALL TIME AFTER FORTY FIVE (45) MINUTES OF COMPLETION OF DISCHARGE OF CARGO, WHEREBY ALL HOSES ARE TO BE DISCONNECTED PROMPTY FROM VESSEL, UNLESS CHARTERER/SHIPPER/RECEIVER DETAINS THE VESSEL;

J.  ALL TIME SPENT FOR EXCESS BERTHING, AND EXPENSES FOR SUCH SOLELY FOR VESSEL'S PURPOSE;

K.  ALL TIME FOR DELAY FOR NON-COMPLIANCE WITH LAW AND REGULATIONS WARRANTY, AND INSURANCE COMPLIANCE.

THE PRINCIPLE OF 'ONCE ON DEMURRAGE, ALWAYS ON DEMURRAGE' SHALL NOT BE DEEMED APPLICABLE TO THIS CHARTER PARTY. ONLY TIME WHICH WOULD COUNT AS USED LAYTIME UNDER THE TERMS HEREOF PRIOR TO THE EXPIRATION OF ALLOWED LAYTIME, SHALL COUNT AS TIME ON DEMURRAGE ONCE ALLOWED LAYTIME HAS EXPIRED.

55- BIMCO ISPS CLAUSE TO APPLY TO THIS CHARTER PARTY

Exhibit 2

02-Aug-07

## LAYTIME STATEMENT

### M/T BALTIC SEA - PALMYRA SHIPPING CP 03/07/2007  (VOY NO.88)

**1ST LOADPORT : SANTA PANAGIA**      **TIME**    **ELAPSED**  **COUNTED**   **ACCUMULATED**

| | | | | | |
|---|---|---|---|---|---|
| NOR TENDERED (11-12/07/2007 0001-2359 HRS) | 09:48 | 12-Jul-07 | | | |
| LAYTIME COMMENCED | 15:48 | 12-Jul-07 | 6.00000 | | |
| COMMENCED SHIFTING & LAYTIME SUSPENDED | 16:42 | 12-Jul-07 | 0.90000 | 0.90000 | |
| VESSEL ALL FAST & LAYTIME RESUMED | 18:18 | 12-Jul-07 | 1.60000 | | |
| HOSES DISCONNECTED & LAYTIME STOPPED | 15:00 | 13-Jul-07 | 20.70000 | 20.70000 | 21.60000  HRS |

**2ND LOADPORT : AUGUSTA**      **TIME**    **ELAPSED**  **COUNTED**   **ACCUMULATED**

| | | | | | |
|---|---|---|---|---|---|
| NOR TENDERED | 17:24 | 13-Jul-07 | | | |
| COMMENCED SHIFTING | 17:24 | 13-Jul-07 | 0.00000 | | |
| VESSEL ALL FAST & LAYTIME COMMENCED | 19:42 | 13-Jul-07 | 2.30000 | | |
| HOSES DISCONECTED & LAYTIME STOPPED | 14:42 | 14-Jul-07 | 19.00000 | 19.00000 | 19.00000 HRS |

**DISPORT : RABIGH**      **TIME**    **ELAPSED**  **COUNTED**   **ACCUMULATED**

| | | | | | |
|---|---|---|---|---|---|
| NOR TENDERED / ANCHORED | 17:36 | 25-Jul-07 | | | |
| LAYTIME COMMENCED | 23:36 | 25-Jul-07 | 6.00000 | | |
| COMMENCED SHIFTING & LAYTIME SUSPENDED | 11:24 | 28-Jul-07 | 59.80000 | 59.80000 | |
| VESSEL ALLFAST & LAYTIME RESUMED | 15:24 | 28-Jul-07 | 4.00000 | | |
| HOSES DISCONNECTED & LAYTIME STOPPED | 00:05 | 30-Jul-07 | 32.68333 | 32.68333 | 92.48333  HRS |

| | | | |
|---|---|---|---|
| LAYTIME ACCUMULATED | = | 133.08333  HRS | |
| LESS:- | | | |
| 1/ LAYTIME ALLOWED | = | 84.00000  HRS | |
| TIME ON DEMURRAGE | = | 49.08333  HRS   ( | 2.04514  DAYS  ) |
| DAILY DEMURRAGE RATE | = | US  $25,000.00 | |
| GROSS DEMURRAGE | = | US  $51,128.47 | |
| LESS ADDRESS COMMISSION (2.5%) | = | US   $1,278.21 | |
| NETT DEMURRAGE | = | US  $49,850.26 | |

Exhibit 3

# Rolling Transport Ltd

**80 Broad Street Monrovia**
**Liberia**

**DEBIT NOTE**

MESSRS: PALMYRA SHIPPING AND CHARTERING LTD

DATE : 02 AUG 2007

NAME OF VESSEL / VOYAGE: BALTIC SEA / VOY 88

D/N NO : 944/TPMS/V/88/3

RE: BALTIC SEA / PALMYRA - CP DATED 03/07/2007

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Demurrage**<br>2.04514 DAYS DEMURARGE AT CHARTER PARTY RATE OF USD 25,000.00 PER DAY PRO RATA | 51,128.47 | |
| **Address Commission**<br>Usd      51,128.47 x      2.5000      Percent | | 1,278.21 |
| | 51,128.47 | 1,278.21 |
| IN WORDS: UNITED STATES DOLLARS:-<br>FORTY-NINE THOUSAND EIGHT HUNDRED FIFTY AND TWENTY-SIX CENTS ONLY.<br><br> PAYABLE IN U.S. DOLLARS BY TELEGRAPHIC TRANSFER:-<br>TO : HONGKONG SHANGHAI BANKING CORP., USA<br>452 FIFTH AVENUE NEW YORK, NY 10018, USA<br>SWIFT : MRMDUS33, CHIPS: 108<br>ABA NO. 021001088<br>IN FAVOUR OF : TATIANA MARITIME INC.,<br>A/C NO. 000135275<br><br>WITH MESSAGE : BALTIC SEA / PALMYRA CP DATED 03/07/2007<br>           - DEMURRAGE | | |
| **AMOUNT DUE TO OWNERS: USD** | 49,850.26 | |

E. & O. E.

AS MANAGER

Page 1/1

# Rolling Transport Ltd

**80 Broad Street Monrovia**
**Liberia**

**DEBIT NOTE**

MESSRS:  PALMYRA SHIPPING AND CHARTERING LTD

DATE   : 21 AUG 2007

NAME OF VESSEL / VOYAGE:  BALTIC SEA / VOY 88

D/N NO : 944/TPMS/V/88/4

RE: BALTIC SEA / PALMYRA - CP DATED 03/07/2007

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Additional War Risk Premium** | | |
| Being call at Rabigh, 25-30/07/2007 | 9,000.00 | |
| Less 12.5% No Claims Discount | | 1,125.00 |
| | 9,000.00 | 1,125.00 |
| IN WORDS: UNITED STATES DOLLARS:- | | |
| SEVEN THOUSAND EIGHT HUNDRED SEVENTY-FIVE | | |
| ONLY. | | |
| PAYABLE IN U.S. DOLLARS BY TELEGRAPHIC TRANSFER:- | | |
| TO : HONGKONG SHANGHAI BANKING CORP., USA | | |
| 452 FIFTH AVENUE NEW YORK, NY 10018, USA | | |
| SWIFT : MRMDUS33, CHIPS: 108 | | |
| ABA NO. 021001088 | | |
| IN FAVOUR OF : TATIANA MARITIME INC., | | |
| A/C NO. 000135275 | | |
| WITH MESSAGE: BALTIC SEA / PALMYRA CP DATED 03/07/2007 | | |
| **AMOUNT DUE TO OWNERS:  USD** | 7,875.00 | |

E. & O. E.

AS MANAGER

Page 1/1

# Rolling Transport Ltd

**80 Broad Street Monrovia**
**Liberia**

**DEBIT NOTE**

MESSRS: PALMYRA SHIPPING AND CHARTERING LTD

NAME OF VESSEL / VOYAGE: BALTIC SEA / VOY 88

RE: BALTIC SEA / PALMYRA – CP DATED 03/07/2007

DATE : 08 OCT 2007

D/N NO : 944/TPMS/V/88/5

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Port Expenses Reimbursement** Actuals incurred at Santa Panagia - being part of additional freight for cargo operations at 3rd loadport, Santa Panagia, per interim port clause (supportings attached) | 76,740.41 | |
| | 76,740.41 | .00 |
| IN WORDS: UNITED STATES DOLLARS:- SEVENTY-SIX THOUSAND SEVEN HUNDRED FORTY AND FORTY-ONE CENTS  ONLY. PAYABLE IN U.S. DOLLARS BY TELEGRAPHIC TRANSFER:- TO : HONGKONG SHANGHAI BANKING CORP., USA 452 FIFTH AVENUE NEW YORK, NY 10018, USA SWIFT : MRMDUS33, CHIPS: 108 ABA NO. 021001088 IN FAVOUR OF : TATIANA MARITIME INC., A/C NO. 000135275 WITH MESSAGE: BALTIC SEA / PALMYRA CP DATED 03/07/2007 | | |
| **AMOUNT DUE TO OWNERS:  USD** | **76,740.41** | |

E. & O. E.

Page 1/1

AS MANAGER